IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

TIMOTHY D. COLEMAN and
THERESA G. COLEMAN,

                Plaintiffs,

v.                                   CIVIL ACTION NO.  3:14-0183

JP MORGAN CHASE BANK, N.A.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the motion by Defendant JP Morgan Chase Bank, N.A., to dismiss the Complaint (ECF No. 5). For the reasons explained below, this motion is **DENIED without prejudice** regarding dismissal of Count II pursuant to Federal Rule of Civil Procedure 12(b)(6), but **with prejudice** as to the remainder. The Court **DIRECTS** Plaintiffs to file, within fourteen (14) days of the entry of this Memorandum Opinion and Order, an Amended Complaint setting out in greater detail the factual elements of Count II. The Amended Complaint shall be identical to the existing Complaint in all other respects.

**I.      Background**

Plaintiffs Theresa and Timothy Coleman commenced the instant litigation in the Circuit Court of Cabell County, West Virginia, on December 11, 2013, based on Defendant's actions as the loan servicer for Plaintiffs' home mortgage. As explained in their Complaint, Plaintiffs encountered difficulty affording their mortgage payments starting in 2008, when Mr. Coleman became ill. Compl. ¶ 5, ECF No. 1-1 at 3-13. On Defendant's suggestion, Plaintiffs thereafter

applied for loan assistance. *Id.* ¶¶ 6-7. In a letter dated June 19, 2009, Defendant presented a forbearance plan to Plaintiffs, and Plaintiffs subsequently agreed to the plan and complied with its terms. *Id.* ¶¶ 8-10. In a letter dated July 16, 2009, Defendant informed Plaintiffs that a foreclosure sale of their home was set for November 4, 2009. *Id.* ¶ 11. Plaintiffs thereafter contacted Defendant regarding their mortgage, and the foreclosure sale was eventually postponed. *Id.* ¶¶ 12-15. Plaintiffs continued making payments during this time. *Id.* ¶ 16. However, in March 2010, Defendant returned one of Plaintiffs' payments. *Id.* ¶ 17. When Plaintiffs then called Defendant, Defendant told Plaintiffs to stop making payments and to instead continue applying for a loan modification. *Id.* ¶ 18.

During the subsequent three years, Plaintiffs submitted documents to Defendant at least eighteen times, and Defendant repeatedly told Plaintiffs not to make payments while their application was being processed. *Id.* ¶¶ 19-20. In addition to requesting irrelevant documents and documents that had already been sent, Defendant "fail[ed] to act on the loan modification in a timely manner," which resulted in Plaintiffs having to resubmit their application. *Id.* ¶ 21. Despite all this, Defendant "inappropriately denied Plaintiffs for assistance for purportedly failing to submit appropriate documentation when Plaintiffs had complied with Defendant's confusing and conflicting requirements to the best of their ability." *Id.* ¶ 22(a). Furthermore, "[e]very time Defendant denied Plaintiffs' applications, Defendant would immediately advise Plaintiffs to reapply for assistance." *Id.* ¶ 22(b). On Defendant's request, Plaintiffs did not make payments, and "[w]hen Plaintiffs expressed concern about the accruing arrears, Defendant repeatedly advised Plaintiffs that Defendant would work out a solution to keep Plaintiffs in their home, regardless of the arrears that accrued while their applications were pending." *Id.* ¶ 22(c) & (d).

Around April 2013, Defendant again scheduled a foreclosure sale of Plaintiffs' home. *Id.* ¶ 24. Plaintiffs subsequently filed for bankruptcy on April 18, 2013, in an attempt to save their home. *Id.* ¶ 25. The next day, Defendant informed Plaintiffs that "it received their initial application too close to the schedule [sic] foreclosure sale date and as a result could not provide assistance." *Id.* ¶ 26. Plaintiffs were advised to yet again apply for a loan modification, and they did so. *Id.* ¶ 27. In a letter dated June 3, 2013, Plaintiffs were informed that their application for a loan modification was denied. *Id.* ¶ 29(a). That denial was the first complete review of Plaintiffs' loan modification application since Plaintiffs first applied for loan modification in 2008. *Id.* ¶ 28. The next day, Defendant told Plaintiffs that to avoid foreclosure, they would need to execute a deed in lieu of foreclosure or a short sale. *Id.* ¶ 31. Plaintiffs state that although they can afford their regular monthly payments at this time, they cannot afford to pay the arrears that have accrued over the past few years. *Id.* ¶¶ 30, 33.

On December 11, 2013, Plaintiffs filed the pending Complaint, bringing the following causes of action against Defendant: Count I - illegal return of payments; Count II - illegal fees; Count III - threats, oppression, and abuse; Count V - misrepresentations and unconscionable conduct; Count VI - tortious interference with contract; Count VII - negligence; and Count VIII - estoppel.[1] This case was removed to federal court on January 2, 2014. Notice Removal, ECF No. 1. Defendant has moved for dismissal of the Complaint, arguing that 1) because of Plaintiffs' recent bankruptcy, Plaintiffs do not have standing to bring these claims and 2) certain counts fail to state a claim for which relief may be granted. Mot. Dismiss, ECF No. 5; Mem. Supp. Mot. Dismiss, ECF No. 6. Plaintiffs filed a Response, ECF No. 7, and Defendant filed a Reply, ECF

---

[1] The Complaint does not include a Count IV. For ease of reference, the Court will utilize the numberings found in the Complaint.

No. 10. After being granted leave by the Court, Plaintiffs filed a Surreply, ECF No. 13. The Motion to Dismiss is now ripe for resolution.

Section II analyzes Defendant's argument that Plaintiffs lack standing because of their recent bankruptcy. Section III examines whether Plaintiffs' Complaint fails to state a claim for which relief may be granted.

## II.      Determination of Bankruptcy's Effect on Plaintiffs' Standing

### A.  Legal Standard

A claim must be dismissed if the court lacks subject matter jurisdiction over the claim. Challenges to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rejected on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id.* If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id.*

On the other hand, a "factual attack" challenges the accuracy of the factual allegations in the complaint upon which subject matter jurisdiction is based.  In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material

fact exists." *Id*. A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. Defendant's attack in the instant case constitutes a factual attack on Plaintiffs' standing. Although not phrased as an attack made pursuant to Rule 12(b)(1), the Court will nonetheless use the standard explained above when examining Defendant's challenge to Plaintiffs' standing.

Defendant attached Plaintiffs' voluntary petition for bankruptcy, dated August 17, 2013, to its Motion to Dismiss. Petition, ECF No. 5-1. Plaintiffs attached to their Response amended schedules for their bankruptcy petition, an order entered in Plaintiffs' bankruptcy case, an order from another bankruptcy case, and a letter from Plaintiffs' counsel to Bankruptcy Trustee Janet Smith Holbrook discussing whether the anticipated recovery in this case will exceed Plaintiffs' bankruptcy exemption. ECF No. 7-1. Lastly, Plaintiffs attached to their Surreply an affidavit from the Bankruptcy Trustee which discusses resolution of Plaintiffs' bankruptcy case and the expected recovery in this civil case. ECF No. 13-1. All of these documents bear on the issue of whether Plaintiffs have standing to pursue this case in light of their recent bankruptcy. Therefore, the Court will consider them when resolving the issue of standing argued in Defendant's Motion to Dismiss.

### B. Discussion

Defendant argues that, because Plaintiffs have filed for bankruptcy, they do not have standing to pursue their claims; instead, according to Defendant, only the Bankruptcy Trustee may pursue the claims that Plaintiffs raise. Under bankruptcy law, "[a]s a general matter, upon the filing of a petition for bankruptcy, 'all legal or equitable interests of the debtor in property' become the property of the bankruptcy estate and will be distributed to the debtor's creditors." *Rousey v. Jacoway*, 544 U.S. 320, 325 (2005) (citing 11 U.S.C. § 541(a)(1)); *see also* 11 U.S.C.

§ 541(a)(1) (bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case"). Causes of action are considered to be "legal and equitable interests" for bankruptcy purposes. *In re Derivium Capital LLC*, 716 F.3d 355, 367 (4th Cir. 2013) (citation omitted).

However, the bankruptcy estate's interest does not extend to property that has been "abandoned" by the bankruptcy trustee. *See* 11 U.S.C. § 554. The Bankruptcy Code explains the procedures surrounding abandonment of property:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

*Id.*

Plaintiffs filed for bankruptcy on April 18, 2013. Compl. ¶ 25. Schedule B of Plaintiffs' voluntary petition for bankruptcy, dated April 17, 2013, lists Plaintiffs' personal property. Under the category of "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Plaintiffs list, *inter alia*, "[c]laim for adding illegal fees and/or other consumer violations, Michael Walker investigating." Petition 12-13. That claim is listed as having an unknown value. *Id.* at 13. In their amended Schedule B, dated August 13, 2013, Plaintiffs add, in that same category, "[c]laim of Debtors against their mortgage holder, Chase, for inflated appraisal and/or other wrongs regarding the

Debtors' mortgage, Mountain State Justice Investigating." Schedule B - Personal Property - Amended, ECF No. 7-1 at 3-6. That claim is listed as having an unknown value. *Id.* These documents indicate that, at some point, Plaintiffs' instant civil action was indeed part of the bankruptcy estate. The issue, then, is whether the civil action has been "abandoned" by the Bankruptcy Trustee.

Attached to Plaintiffs' Surreply is an affidavit from the Bankruptcy Trustee explaining that, although the amended Schedule B lists the instant civil action as having an "unknown" value, the claimed exemption[2] for that "asset" is $30,000. Holbrook Aff. ¶ 3, Mar. 13, 2014, ECF No. 13-1. In November 2013, Plaintiffs' counsel informed the Bankruptcy Trustee via letter that counsel did "not anticipate that the recovery [in the instant civil action] will exceed [Plaintiffs'] exemptions regarding this matter. As a result, [she] enclose[ed] a stipulation reflecting Judge Pearson's[, the bankruptcy judge,] procedure in this circumstance, setting forth that [the Bankruptcy Trustee] will be advised immediately if it appears likely at any point that recovery will exceed [Plaintiffs'] exemptions." Letter from Jennifer S. Wagner, Plaintiffs' counsel, to Janet Smith Holbrook, Bankruptcy Trustee (Nov. 4, 2013), ECF No. 7-1 at 13. The stipulation referenced in that letter notes that no objection to the exemption claimed for the instant civil action was filed and provides that Plaintiffs "may prosecute the said cause of action in their own names." Stipulation ¶¶ 1-3, ECF No. 7-1 at 14.[3] The stipulation also provides that Plaintiffs must report any judgment that exceeds the exemption to the Bankruptcy Trustee, that the Trustee must review any settlement, and that "[s]hould [Plaintiffs] desire to compromise and settle the

---

[2] A "claimed exemption" is property which is not counted as property of the bankruptcy estate. *See* 11 U.S.C. § 522.
[3] This stipulation is part of Plaintiffs' bankruptcy case, *In re Coleman*, No. 3:13-bk-30194 (Bankr. S.D. W. Va.).

aforesaid cause of action for more than their allowable exemptions, any proposed settlement must be brought before this [Bankruptcy] Court in conjunction with [the] Trustee." *Id.* ¶¶ 4-6.

The Bankruptcy Trustee states that although the maximum possible recovery in this civil case exceeds the claimed exemption of $30,000, she believes it is unlikely that Plaintiffs will recover more than $30,000; this conclusion led her to agree to the stipulation. Holbrook Aff. ¶ 8. Additionally, the Bankruptcy Trustee "did not object to the final order [entered by the bankruptcy court on February 20, 2014,] closing the case, because the estate's interests are protected by the stipulation provided by [Plaintiffs'] counsel." *Id.* ¶ 9.

Plaintiffs assert that because of these developments, the instant civil action has been "abandoned" by the bankruptcy estate. The Bankruptcy Trustee's affidavit and the stipulation indicate that this civil action has indeed been "abandoned" for bankruptcy purposes. Furthermore, Defendant has not sought to offer any response to Plaintiffs' new information in the Surreply regarding abandonment, namely, the Bankruptcy Trustee's affidavit. Plaintiffs additionally point to an order entered in their bankruptcy case on January 15, 2014, after a final hearing on Defendant's motion in bankruptcy court to modify the automatic bankruptcy stay. Order from *In re Coleman* (Jan. 15, 2014), ECF No. 7-1 at 9. The order denies Defendant's motion and states, in pertinent part, "Counsel notified the Court that the [Plaintiffs] had recently filed a 'mortgage improprieties' type of case in state court. The Bankruptcy Court therefore finds that [Defendant] has adequate protection and that [Defendant] can assert and protect its rights in the state court action." *Id.* This order further supports Plaintiffs' assertion that they are permitted to proceed with this civil matter notwithstanding their bankruptcy. Case law also supports Plaintiffs' ability to pursue the instant civil action. *See Wissman v. Pittsburgh Nat. Bank*, 942 F.2d 867, 871-72 (4th Cir. 1991) (finding that the plaintiffs had standing to pursue their civil

claim after being granted a bankruptcy exemption); *Miller v. Huntington Nat. Bank, N.A.*, No. 3:12-cv-114, 2013 WL 593780, at *2 n.1 (N.D. W. Va. Feb. 15, 2013) (citing *Wissman* for the proposition that "[i]f the Plaintiff properly exempts some portion of the claims in this case, he may have standing to bring the claim for that amount").

Defendant argues that Plaintiffs have taken inconsistent positions regarding the amount of damages they may recover in the instant civil action. In support of this argument, Defendant points to its own Notice of Removal, which calculates solely the civil penalties sought by Plaintiffs to be in excess of $90,000. Notice Removal ¶ 14. Defendant argues that this potential recovery is inconsistent with Plaintiffs' position that the likely recovery in this civil action will not exceed $30,000. However, the Court finds no inconsistency in Plaintiffs' position. The amount of money which Plaintiffs *may potentially* recover is distinct from the amount of money Plaintiffs are *likely* to recover. Plaintiffs stipulated that they did not believe their recovery would exceed $30,000; after careful consideration, the Bankruptcy Trustee agreed with Plaintiffs' position. Furthermore, Plaintiffs have promised to inform the Bankruptcy Trustee if it appears that they will likely recover more than $30,000. The Court gives no weight to the fact that Plaintiffs never objected to the possible recovery amount stated by Defendant in the Notice of Removal. Again, the theoretical recovery amount may be much higher than what Plaintiffs actually believe they are likely to recover, and the Court finds no problem or inconsistency with this fact.

Defendant argues that if the Court finds that Plaintiffs have standing, the Court should limit Plaintiffs' recovery to the claimed exemption of $30,000 and/or Plaintiffs should be judicially estopped from seeking damages above $30,000. The Court declines to do so, however, based on the stipulation signed by Plaintiffs. Plaintiffs have promised to inform the Bankruptcy

Trustee about the recovery in this case, as outlined in that stipulation. The Bankruptcy Trustee and the bankruptcy court believe the stipulation is sufficient to protect the bankruptcy estate, and this Court will not find otherwise. Additionally, judicial estoppel would be inappropriate at this stage because there is no indication that Plaintiffs have acted in bad faith. *See Watkins v. Wells Fargo Bank*, No. 3:10-cv-1004, 2011 WL 777895, at *13 (S.D. W. Va. Feb. 28, 2011) (noting that one requirement for judicial estoppel is that the party "must have intentionally misled the court to gain unfair advantage" (quoting *Whitten v. Fred's, Inc.*, 601 F.2d 231, 241 (4th Cir. 2010))).

On the basis of the information presented, the Court finds that Plaintiffs have sufficiently alleged their standing to pursue the instant civil matter. Therefore, the Court rejects Defendant's argument that Plaintiffs' Complaint should be dismissed for lack of standing.

### III.    Whether Plaintiffs Have Sufficiently Stated Claims for Relief

As alternate grounds for dismissal, Defendant argues that Counts I, II, VI, VII, and VIII should be dismissed for failure to state a claim for which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will examine each of these counts in turn. Because Defendant has not moved for Counts III and V to be dismissed, the Court will not assess the sufficiently of those two counts in this Section.

### A.  Legal Standard

When considering a motion to dismiss pursuant to Rule 12(b)(6), 1) a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then 2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the factual allegations in the complaint as true, and the complaint must be viewed in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### B.  Count I - Illegal Return of Payments

Plaintiffs allege that in March 2010, Defendant returned a payment made by Plaintiffs and did not apply that payment to Plaintiffs' account. Compl. ¶ 17. Plaintiffs claim that Defendant's return of Plaintiffs' payment "on at least one occasion" violated West Virginia Code § 46A-2-115(c). That section states, in pertinent part:

> All amounts paid to a creditor arising out of any consumer credit sale or consumer loan shall be credited upon receipt against payments due: *Provided*, That amounts received and applied during a cure period will not result in a duty to provide a new notice of right to cure; and provided further that partial amounts received

during the reinstatement period set forth in subsection (b) of this section do not create an automatic duty to reinstate and may be returned by the creditor. . . .

W. Va. Code § 46A-2-115(c) (emphasis in original). The reinstatement period is a period of time "beginning with the trustee notice of foreclosure and ending prior to foreclosure sale." *Id.* § 46A-2-115(b). Defendant argues that Plaintiffs' March 2010 returned payment occurred during the reinstatement period and that, by failing to plead that their returned payment was a full (rather than partial) payment, Plaintiffs have accordingly failed to plead the elements of this cause of action. Plaintiffs counter that their March 2010 returned payment was not made during the reinstatement period and that, regardless, they were not required to plead anything beyond what Count I already includes.

The Court believes that Section § 46A-2-115(c) should be interpreted such that the two clauses following "*Provided*" are considered defenses that a defendant may raise in opposition to a claim against it but that need not be pled by the plaintiff in the complaint. If a plaintiff were required to allege that his or her payment was not a partial payment during a reinstatement period, so also would that plaintiff be required to make allegations regarding the cure period. That requirement would go beyond the pleading standards. Furthermore, the Court will not at this stage resolve the parties' arguments regarding whether the March 2010 payment was made during the reinstatement period. That argument is more appropriately resolved after further factual development. In summary, taking the allegations in the Complaint as true, Plaintiffs have sufficiently pled Count I. *See Petty v. Countrywide Home Loans, Inc.*, No. 3:12-cv-6677, 2013 WL 1837932, at *13 (S.D. W. Va. May 1, 2013) ("[T]he Court finds Plaintiffs' allegations that Defendant instructed them not to make payments and, if they did, their payments would be returned, is [sic] sufficient to state a plausible claim under West Virginia Code § 46A–2–115.").

**C.  Count II - Illegal Fees**

Plaintiffs allege that "Defendant has charged and threatened to charge attorney fees and default fees that are not authorized by the contract or law to Plaintiffs' account" and "has assessed and threatened to assess late fees in excess of $15 to Plaintiffs' account." Compl. ¶¶ 39-40. Plaintiffs claim that this conduct violated West Virginia Code §§ 46A-2-115, -127, -128, and 46A-3-113.

Defendant argues that Plaintiffs have not sufficiently pled this claim because they cite no specific instance where they were threatened with illegal fees or actually assessed improper charges; neither do they allege the amount of any illegal fees, except that they exceeded $15. Defendant claims that it "should not be obligated to go through years of records only to have to divine which fees, if any, Plaintiff [sic] contends are unlawful." Mem. Supp. Mot. Dismiss 9. Plaintiffs counter that "much of the information (such as exact dates of telephone communications with Defendant's agents) is contained in Defendant's own records, which Plaintiff [sic] cannot access without discovery," but then also concede that they "can provide their own documents and identify dates, names, and other information requested, if Defendant seeks this information in discovery." Resp. 10. According to Plaintiffs, Defendant has sufficiently been put on notice of the claims against it.

The Court is troubled by the lack of factual detail provided in Count II. However, the Court declines to dismiss Count II at this stage. Rather, the Court **DIRECTS** Plaintiffs to file, within fourteen (14) days of the entry of this Memorandum Opinion and Order, an Amended Complaint setting out in greater detail the factual elements of Count II. The Amended Complaint shall be identical to the existing Complaint in all other respects.

### D.  Count VI - Tortious Interference with Contract

Plaintiffs allege that they "entered into a loan contract, secured by their home, by which Plaintiffs were to make monthly payments for the benefit of the loan's owner and to ensure against foreclosure." Compl. ¶ 49. Further, they claim that Defendant—the loan servicer—is not a party to that loan contract. *Id.* ¶ 50. Plaintiffs allege that "Defendant intentionally interfered with said contract by returning Plaintiffs' payment and instructing Plaintiffs not to make payments while their loan modification applications were being processed, and then failing to timely or appropriately evaluate their applications." *Id.* ¶ 51. This resulted in "substantial and unaffordable arrears accru[ing] on the loan . . . , which Plaintiffs were unable to pay." *Id.* ¶ 52.

A claim of tortious interference with a contract has the following elements: "'(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages.'" Syl. pt. 5, *Hatfield v. Health Mgmt. Assocs. of W. Va*, 672 S.E.2d 395 (W. Va. 2008) (quoting syl. pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166 (W. Va. 1983)). However, "where an agent breaches a contract to which his principal is a party on behalf of his principal, no cause of action for tortious interference with regard to such contract can be had." *Cotton v. Otis Elevator Co.*, 627 F. Supp. 519, 522 (S.D. W. Va. 1986).

Defendant argues that Plaintiffs' cause of action fails because Defendant is not a party outside of Plaintiffs' loan contract but, rather, was acting as an agent of the Federal Home Loan Mortgage Corporation—known as Freddie Mac—the party with whom Plaintiffs entered into the loan contract. Looking to the Complaint's characterization of the relationship between Defendant and Freddie Mac, Plaintiffs first allege that "Defendant Chase is the loan servicer for Plaintiffs' loan and, upon information and belief, services the loan on behalf of the loan's holder but is not a

party to the contract." Compl. ¶ 2. Plaintiffs later allege that "according to Defendant, Defendant is not a party to the [loan] contract." *Id.* ¶ 56; *see also id.* ¶ 50. The Court will not interpret Plaintiffs' conflicting allegations about Defendant's relationship with Freddie Mac to preclude Plaintiffs' tortious interference claim at this stage. Furthermore, as Plaintiffs suggest, even if it were undisputed that Defendant was a party to the contract, Defendant could nonetheless face liability for tortious interference if it acted outside of the scope of its existing relationship with Freddie Mac. *See Hatfield*, 672 S.E.2d at 403. Given the factual disputes regarding Defendant's relationship with Freddie Mac, it would be premature to rule on the nature of their relationship at this time.

Defendant additionally argues that, even if Plaintiffs establish a prima facie case of tortious interference, Defendant has a complete defense to this claim based on Defendant's financial interest in Freddie Mac's business. In support of this proposition, Defendant cites *Bryan v. Massachusetts Mutual Life Insurance Co.*, 364 S.E.2d 786, 792 (W. Va. 1987), which states, "'If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses. Defendants are not liable . . . if they show . . . their intention to influence another's business policies in which they have an interest.'" Syl. pt. 2, *id.* (quoting syl. pt. 2, *Torbett*, 314 S.E.2d 166). *Bryan*, however, was an appeal of *summary judgment* rulings, not a motion to dismiss. At the motion to dismiss stage, taking the allegations in the Complaint as true, it would be premature for the Court to rule on whether Defendant's proffered defense of financial interest precludes Plaintiffs' success on this claim. Taking the allegations in the Complaint as true, Plaintiff has sufficiently pled a claim for tortious interference. In summary, because there is a need for further factual development regarding the extent of any agency relationship between Defendant and Freddie Mac, the Court declines to dismiss Count VI.

**E.  Count VII - Negligence**

Plaintiffs allege that Defendant's "significant communications and activities" involving Plaintiffs created a special relationship between Defendant and Plaintiffs and that Defendant breached the duty created by that special relationship. Compl. ¶¶ 55, 57. "[U]nder West Virginia law, a plaintiff 'cannot maintain an action in tort for an alleged breach of a contractual duty.'" *Ranson v. Bank of Am., N.A.*, No. 3:12-cv-5616, 2013 WL 1077093, at *5 (S.D. W. Va. Mar. 14, 2013) (quoting *Lockhart v. Airco Heating & Cooling*, 567 S.E.2d 619, 624 (W. Va. 2002) (footnote omitted)). Instead, "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law *because of the relationship of the parties*, rather than a mere omission to perform a contract obligation." *Id.* (emphasis in original) (internal quotation marks omitted). In deciding whether a "special relationship" exists beyond the parties' contractual obligations, courts look to "'the extent to which the particular plaintiff is affected differently from society in general.'" *Id.* (quoting *Aikens v. Debow*, 541 S.E.2d 579, 589 (W. Va. 2000)). For lender-borrower situations, "'courts consider whether the lender has created such a "special relationship" by performing services not normally provided by lender to a borrower.'" *Id.* (quoting *Warden v. PHH Mortgage Corp.*, No. 3:10-cv-00075, 2010 WL 3720128, at *9 (N.D. W. Va. Sept. 16, 2010)).

Defendant argues that Plaintiffs' negligence claim must be dismissed because no special relationship exists between Plaintiffs and Defendant. Although it may be true that Defendant's interactions with Plaintiffs were customary loan servicing activities, those activities would serve to preclude a finding that a special relationship exists—and accordingly prohibit Plaintiffs' negligence claim—only if a contractual relationship exists between Plaintiffs and Defendant. *See id.* at *6 (dismissing negligence claim where the court found that the plaintiff "failed to allege

any positive legal duty beyond [the] [d]efendant's purported contractual obligations"); *see also Petty*, 2013 WL 1837932, at *12 ("[The] [p]laintiffs have not identified any contract between themselves and [d]efendant [Bank of America ("BOA")], and BOA denies that one exists. Thus, the reasoning in *Ranson* does not apply to [d]efendant BOA."). As discussed in the previous Sub-section, there is a factual dispute between the parties on the issue of whether a contractual relationship exists between Plaintiffs and Defendant.[4] Taking the allegations the Complaint as true and reading the Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently pled Count VII.

## F.  Count VIII - Estoppel

Lastly, Plaintiffs allege that "Defendant's agents represented to Plaintiff [sic] that Defendant would provide assistance to keep Plaintiffs in their home rather than pursue foreclosure and instructed Plaintiffs not to make payments on the loan" and that "Defendant knew or should have known at the time that its representations were false." Compl. ¶¶ 60-61. Plaintiffs stopped making payments in reliance on those statements, "had a reasonable expectation that Defendants [sic] would provide them with assistance and not proceed with foreclosure on their home, as promised," and were injured by that reliance. Id. ¶¶ 62-64. A claim for equitable estoppel has the following elements in West Virginia:

> [(1)] a false representation or a concealment of material facts; [(2)] it must have been made with knowledge, actual or constructive of the facts; [(3)] the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; [(4)] it must have been made with the intention that it should be acted on; and [(5)] the party to whom it was made must have relied on or acted on it to his prejudice.

---

[4] Defendant cites *O'Brien v. Quicken Loans, Inc.*, No. 2:12-cv-5138, 2013 WL 2319248 (S.D. W. Va. May 28, 2013), which was decided less than a month after *Petty*, for the proposition that no special duty exists between a servicer and borrower. Although the court in that case did dismiss a negligence claim, it had earlier discussed the contract that existed between the plaintiff and the servicer. In the instant case, however, the existence of such a contract is in dispute.

Syl. pt. 3, *Folio v. City of Clarksburg*, 655 S.E.2d 143 (W. Va. 2007) (quoting syl. pt. 6, *Stuart v. Lake Wash. Realty Corp.*, 92 S.E.2d 891 (W. Va. 1956)).

Defendant argues that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to claims for equitable estoppel. Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Court assumes, without deciding, that Rule 9(b) applies to Plaintiffs' estoppel claim and finds that Plaintiffs' pleading of estoppel satisfies this heightened pleading standard. As Plaintiffs allege, Defendant presented a forbearance plan for July to September 2009 and Plaintiffs complied with the plan's terms. Compl. ¶¶ 8-10. Regardless, Defendant proceeded to foreclosure on Plaintiffs' home. *Id.* ¶ 11. Plaintiffs subsequently contacted Defendant and were told to apply for a loan modification. *Id.* ¶ 13. Plaintiffs were eventually told to stop making payments during the time that their application was pending. *Id.* ¶¶ 18-19. Plaintiffs stopped making payments but continuously sent in information, as requested, to support their application for loan modification. *Id.* ¶¶ 20-21. Defendant stated that it "would work out a solution to keep Plaintiffs in their home," despite the accruing arrears, and repeatedly advised Plaintiffs to reapply for loan assistance. *Id.* ¶ 22(b) & (d). Defendant suggests that the solution of reinstatement was always available to Plaintiffs, but if that is the case, then Defendant's alleged representations certainly suggested that *another* solution would be reached. Based on these promises, Plaintiffs have sufficiently pled Count VIII. *See Corder*, 2011 WL 289343, at *5-6 (declining to dismiss fraud claim).[5]

---

[5] "The crux of Corder's fraud allegation is that 'Defendant servicer [BAC] represented to Plaintiff that it was providing him with a loan modification rather than pursuing foreclosure,'

Defendant argues that Plaintiffs knew their home was being foreclosed upon since September 2009 and that the sale was merely postponed but never canceled. However, Defendant need not have told Plaintiffs that it would *never* foreclose on Plaintiffs home in order for Plaintiffs to sufficiently plead estoppel. It is sufficient that Defendant allegedly made promises to Plaintiffs concerning the loan modification and then broke those promises, as explained above. Defendant also argues that Plaintiffs did not reasonably rely on any statements that they should stop making loan payments, because the loan documents clearly require otherwise. The Court rejects that argument at this stage, however, because the loan documents have not yet been presented to the Court.

Defendant also makes a cursory argument that expressions of future intent cannot form the basis of an estoppel claim, citing a U.S. Supreme Court case from 1878. *See Union Mut. Life Ins. Co. v. Mowry*, 96 U.S. 544 (1877). Without fuller argument on this point, the Court rejects this argument. Defendant additionally argues that oral agreements cannot underlie an equitable estoppel claim, citing to *Cottrell v. Nurnberger*, 47 S.E.2d 454 (W. Va. 1948). At this time, the Court rejects this argument in light of the complex interactions surrounding the attempted loan modification, the alleged false promises, and the remaining factual disputes in this case. *See Corder*, 2011 WL 289343, at *6 (rejecting statute of frauds defense because the plaintiff's "fraud claim is premised not on the breach of an alleged oral contract concerning the sale or lease of land, but on [the] defendant's knowingly false statements of material fact"). Drawing all permissible inferences in favor of Plaintiffs, the Court accordingly declines to dismiss Count VIII.

---

[and] that BAC nonetheless foreclosed on Corder . . . . Drawing all inferences in the plaintiff's favor, as the court must on a 12(b)(6) motion to dismiss, the court construes Corder's allegations to assert that defendant had no intention to fulfill the promise at the time it was made." *Corder*, 2011 WL 289343, at *6 (citing *Croston v. Emax Oil Co.*, 464 S.E.2d 728, 732 (W. Va. 1995)).

## IV.    Conclusion

For the reasons explained above, Defendant's motion to dismiss is **DENIED without prejudice** regarding dismissal of Count II pursuant to Federal Rule of Civil Procedure 12(b)(6), but **with prejudice** as to the remainder. The Court **DIRECTS** Plaintiffs to file, within fourteen (14) days of the entry of this Memorandum Opinion and Order, an Amended Complaint setting out in greater detail the factual elements of Count II. The Amended Complaint shall be identical to the existing Complaint in all other respects.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:    May 8, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE